THE HONORABLE JAMAL N WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JOHN ELLIOTT, RICARDO CAMARGO, JAVIER ROVIRA, and BRADLEY SMITH,

Plaintiffs,

v.

VALVE CORPORATION,

Defendant.

Case No. 2:24-cv-01218-JNW

**PLAINTIFFS' MOTION TO APPOINT HAGENS BERMAN SOBOL SHAPIRO LLP AND BUCHER LAW PLLC AS INTERIM CO-LEAD CLASS COUNSEL**

**NOTE FOR MOTION CALENDAR:**
October 23, 2024



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

- A. Summary of the *Elliott* Plaintiffs' claims ..... 3
- B. The consolidated game developer case against Valve ..... 3
- C. Plaintiffs' arbitrations against Valve ..... 4

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

- A. Proposed Class Counsel have undivided loyalties to Plaintiffs and commit to protect the interests of the consumer class. ..... 5
- B. Proposed Class Counsel have already done substantial work to investigate the *Elliott* Plaintiffs' claims and advance this litigation on behalf of the consumer class (Fed. R. Civ. P. 23(g)(1)(A)(i)). ..... 6
- C. Proposed Class Counsel have extensive experience in litigating complex antitrust class actions including the types of claims asserted in this action (Fed. R. Civ. P. 23(g)(1)(A)(ii)). ..... 7
  - 1. Hagens Berman ..... 7
    - a. Steve Berman ..... 8
    - b. Ben Harrington ..... 9
    - c. Elaine Byszewski ..... 10
    - d. Xiaoyi (Kelly) Fan ..... 10
  - 2. Bucher Law ..... 11
- D. Proposed Class Counsel have deep knowledge of the applicable law and led the charge developing the law relevant to this case (Fed. R. Civ. P. 23(g)(1)(A)(iii)). ..... 11
- E. Proposed Class Counsel have the human and financial resources to litigate these claims (Fed. R. Civ. P. 23(g)(1)(A)(vi)). ..... 12

V. CONCLUSION ..... 12





## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Saint-Gobain Performance Plastics Corp.*, 2016 WL 4028974 (N.D.N.Y. July 27, 2016) ....6

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) ....10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011) ....1

*McFadden v. Microsoft Corp.*, 2020 WL 5642822 (W.D. Wash. Sept. 22, 2020) ....5

**Other Authorities**

7B Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1802.3 (3d ed. 2005) ....5

Fed. R. Civ. P. 23 .... *passim*



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

To ensure the effective prosecution of this litigation, Plaintiffs John Elliott, Ricardo Camargo, Javier Rovira, and Bradley Smith (together, the "*Elliott* Plaintiffs") respectfully request the Court appoint the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Bucher Law PLLC ("Bucher Law") (together "Proposed Class Counsel") as Interim Co-lead Class Counsel for the proposed class of consumers who purchased personal computer ("PC") games or in-game products from Valve's online store.

## I. INTRODUCTION

Rule 23(g)(3) permits the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." In antitrust cases with "two distinct groups of plaintiffs," the "commonsense approach is to divide plaintiffs into two putative classes and appoint interim lead counsel for each class." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5007957, at *3 (S.D.N.Y. Oct. 18, 2011) (noting the necessity of appointing separate lead counsel as the "two classes may be differently positioned at various stages of the litigation, creating a potential conflict in their joint representation"). This is such a case.

In 2021, a group of game developers and game consumers filed a class action complaint in the United States District Court for the Western District of Washington, alleging that Valve engages in anticompetitive practices to monopolize PC gaming markets. *See Wolfire Games, LLC v. Valve Corp.*, No. 21-cv-00563 (W.D. Wash. Apr. 27, 2021) (the "*Wolfire* Action"). Valve moved to compel arbitration of the consumers' claims, relying on the arbitration clause in the Steam Subscriber Agreement ("SSA"). The Court granted Valve's motion, holding that the threshold issue of arbitrability needed to be resolved in arbitration. *See Wolfire*, ECF No. 66. As a result, claims brought by game consumers were stayed pending arbitration. *Id.*

Class plaintiffs often cease litigating when arbitration is so compelled. But Proposed Class Counsel did not. They filed arbitration demands for thousands of Valve consumers who were not parties to the *Wolfire* Action, including the *Elliott* Plaintiffs. Proposed Class Counsel challenged the enforceability of Valve's arbitration provision in a series of individual arbitrations. Declaration of William Bucher in Support of Motion for Appointment of Interim Co-Lead Counsel ("Bucher



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Decl.”), at ¶ 9. Each named Plaintiff ultimately won a binding decision from an arbitrator rendering Valve’s arbitration provision unenforceable, either due to lack of notice or because it impermissibly seeks to bar public injunctive relief, or both. *See id.*

Upon receiving the orders voiding the arbitration provision, Proposed Class Counsel promptly filed a proposed class action on behalf of similarly situated Valve customers in this Court. *See* Compl., ECF No. 1. Due to Proposed Class Counsel’s successful challenges, Valve announced on September 25, 2024, that it had withdrawn its mandatory arbitration clause and replaced it with a venue selection clause stating: “All disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.” *Wolfire*, ECF No. 362 at 3. In notifying the Court of this development, Valve specifically highlighted that this step was taken “[i]n light of the arbitrator’s rulings that the arbitration agreement in the prior SSA is unenforceable,” with respect to the Plaintiffs here, which rulings were obtained by proposed Class Counsel Bucher Law PLLC. *Id.* at 2-3.

By successfully challenging Valve’s arbitration provision, the *Elliott* Plaintiffs and their counsel have demonstrated their ability to vigorously prosecute this action on behalf of the proposed consumer class. Indeed, they have enabled class-wide litigation of these claims. Accordingly, appointing Proposed Class Counsel as interim co-lead counsel fairly recognizes their extensive work in filing individual arbitration demands and the consumer class action against Valve.

In addition, in representing only Valve consumers, and not game developers, Proposed Class Counsel are not undermined by any conflict of interest.

Finally, Proposed Class Counsel have a deep bench of competition and class action lawyers with an unparalleled track record of prosecuting groundbreaking antitrust litigation in the technology space, including comparable monopolization and tying claims against Apple and Google. *See Cameron v. Apple Inc.*, No. 4:19-03074-YGR (N.D. Cal.) ($100 million settlement); *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.) ($90 million



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

settlement). Proposed Class counsel will bring that experience to bear in this matter to achieve maximum recovery for the proposed class.

## II. BACKGROUND

### A. Summary of the *Elliott* Plaintiffs' claims

On August 9, 2024, Proposed Class Counsel filed a class action complaint against Valve on behalf of game consumers, alleging that Valve has used anticompetitive restraints to unlawfully monopolize the market for PC game distribution. *See* ECF No. 1. Specifically, the *Elliott* Plaintiffs allege that consumers who purchased games or in-game products on the Steam Store, which is operated by Valve, paid supracompetitive prices and were harmed by Valve's platform most-favored-nations clause (the "PMFN"). Valve's PMFN prevents any developer that sells a game on Steam from either (a) selling that game on a rival platform for a lower price (price parity), or (b) providing additional game content or enhancements on a rival platform (content parity). The *Elliott* Plaintiffs further allege that Valve has implemented an unlawful product "tie" by mandating use of its payment processing system for in-game purchases.

### B. The consolidated game developer case against Valve

There currently is no other consumer case against Valve challenging Valve's PMFN. In the related *Wolfire* Action, all plaintiffs on the operative pleading are game developers who sell PC games through Valve's online store. *See Wolfire,* ECF No. 127 at ¶¶ 27-30.

This was not always the case. Certain counsel to the *Wolfire* plaintiffs had initially sought to represent *both* game publishers and consumers. *Wolfire*, ECF No. 1. Leadership was contested, specifically by Lockridge Grindal Nauen PLLP ("LGN") and Wilson Sonsini Goodrich & Rosati PC ("WSGR"), who had filed a class action complaint against Valve on behalf of game developers only. *See Dark Catt Studios Holdings Inc. v. Valve Corporation*, No. 2:21-cv-00872-JCC (W.D. Wash. filed June 28, 2021) (the "*Dark Catt*" Action).

Both LGN and WSGR are now members of the interim co-lead counsel group in the *Wolfire* Action. But before joining that group, they raised serious concerns about counsel in the *Wolfire* Action representing both game developers and consumers. In LGN and WSGR' motion to be appointed as lead counsel, they pointedly acknowledged that the interests of "developers who



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

sold games on Valve's Steam website and consumers who bought games through Steam . . . diverge in material ways that require separate representation from the start of the litigation." *Wolfire*, ECF No. 46. Specifically, the motion highlighted that the plaintiffs in *Wolfire* argue that in a competitive world, where game developers paid lower fees to Valve, developers would pass those savings to game buyers in the form of lower game prices. Thus, there would be a single pool of total "damages" that must be allocated between developers and consumers based on the rate of pass-through. This creates an irreconcilable conflict of interest, as "[t]he same counsel cannot credibly argue both that Developers should recover the full amount of the overcharge they paid to Valve, and that the buyers should also recover most or all of this same amount because it was passed through to them as higher retail prices." *Id*. at 8.

This Court deferred resolving the conflicts issue but flagged that under Fed. R. Civ. P. 23(g)(1)(B), "whether counsel could adequately and fairly represent the interest or interests of those publishers, if also representing game purchasers (or vice versa)" is a "closer issue." *Wolfire*, ECF No. 63 at 4. As argued by the *Dark Catt* counsel, "each group of plaintiffs would likely have competing claims to any recovery and differing incentives when it comes to proving the amount of recovery properly attributable to each group." *Id*. at 3.

After Valve's motion to dismiss the developer class was denied, counsel to the *Wolfire* and *Dark Catt* plaintiffs joined forces and filed a renewed motion to be appointed lead counsel for a consolidated class of game developers (also known as game "publishers"). This group did not seek to be appointed counsel as to consumers, whose claims had been stayed pending arbitration. *See Wolfire*, ECF No. 91 at n.1 ("The proposed leadership structure here applies only to the game publisher plaintiffs."). The Court granted the leadership motion. *See Wolfire*, ECF No. 92. Lead counsel to the developer class subsequently amended their operative complaint two times, and each of these amended complaints was brought on behalf of developers only, with no claims asserted on behalf of consumers. *Wolfire*, ECF No. 99 at ¶¶ 27-30; ECF No. 127 at ¶¶ 27-30.

**C. Plaintiffs' arbitrations against Valve**

Bucher Law has been representing individual clients in Valve arbitrations since



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

early 2023. *See* Bucher Decl. ¶ 2. Representing more than 50,000 individual claimants, including each named Plaintiff in this matter, Bucher Law attorneys and staff have devoted thousands of hours developing and prosecuting Valve arbitrations, while devoting substantial firm resources to these matters (including more than $500,000 in costs). *See id.* ¶¶ 5-7. As noted above, these efforts have generated groundbreaking results, including four binding decisions setting aside Valve's arbitration provision as unenforceable. Valve has acknowledged that these decisions, generated through the efforts of Bucher Law, prompted Valve to remove the arbitration provision from its terms of use, along with the associated class action waiver. As a result, Valve consumers are authorized to proceed in federal court and seek collective relief through the class action vehicle.

## III. LEGAL STANDARD

Rule 23(g)(3) allows the Court to designate interim class counsel "to act on behalf of a putative class before determining whether to certify a matter as a class action." *McFadden v. Microsoft Corp.*, 2020 WL 5642822, at *1 (W.D. Wash. Sept. 22, 2020). "Factors relevant to the appointment of counsel include: '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(A)). In addition to the four "must" factors in Rule 23(g)(1)(A), the Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). No single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the applicants' relative strengths. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1802.3 (3d ed. 2005).

## IV. ARGUMENT

### A. Proposed Class Counsel have undivided loyalties to Plaintiffs and commit to protect the interests of the consumer class.

Proposed Class Counsel are not representing game developers and have no interests that are adverse to, conflict with, or are antagonistic to the interests of the consumer class. With no



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

conflicts to hold them back, Proposed Class Counsel will make every effort to prosecute this case successfully, as they have done historically. Proposed Class Counsel have a demonstrated record of accomplishment in working professionally with defense counsel and will continue to do so. *See Baker v. Saint-Gobain Performance Plastics Corp.*, 2016 WL 4028974, at *4 (N.D.N.Y. July 27, 2016) (interim counsel's "ability 'to command the respect of their colleagues and work cooperatively with opposing counsel and the court'" are important considerations) (quoting MANUAL FOR COMPLEX LITIGATION § 10.224 (4th ed. 2004)).

To the extent developer counsel in the *Wolfire* action seek to represent consumers as well, an irreconcilable conflict prevents them from doing so. As certain co-lead *Wolfire* counsel have acknowledged, under the theory of damages alleged in the *Wolfire* complaint, game developers and consumers' interests diverge irreconcilably, particularly when it comes to assessing the anticompetitive effects of the PMFN and measuring damages. *See Wolfire*, ECF 46. Specifically, developers in the *Wolfire* Action are claiming damages for the amount of the Valve overcharge (i.e., difference between Valve's fees and a competitive rate) that would *not* be "passed down to consumers in the form of lower retail prices for PC games." *See Wolfire,* ECF No. 203 at 34. Accordingly, the *Wolfire* developers allege one fixed pot of "damages" that must be allocated between developers and consumers based on a rate of pass-through. PC game consumers' and publishers' incentives are, therefore, not aligned.

### B. Proposed Class Counsel have already done substantial work to investigate the *Elliott* Plaintiffs' claims and advance this litigation on behalf of the consumer class (Fed. R. Civ. P. 23(g)(1)(A)(i)).

Proposed Class Counsel have already taken significant steps to identify and investigate Plaintiffs' claims and to advance this litigation. Counsel worked together and filed the instant action on August 9, 2024. The 60-page complaint reflects the firms' extensive pre-filing factual investigation into the PC game market and a careful legal analysis of the anticompetitive effects caused by Valve' PMFN. It includes additional tying claims not asserted in the *Wolfire* case, as well as additional factual allegations supporting the *Elliott* Plaintiffs' monopolization theory.

Moreover, Bucher Law has been litigating Valve's anticompetitive conduct and the effects of its PMFN clause on behalf of game consumers in individual arbitrations. *See* Bucher Decl. ¶ 2.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

The firm began representing individual clients in Valve arbitrations in early 2023, and has invested substantial resources investigating and pursuing these matters. *Id.* ¶¶ 3-7.

For years, Valve imposed on its consumers an arbitration provision that specifically prohibited class actions. This changed only recently, after Bucher Law filed thousands of individual arbitration demands, challenging the enforceability of Valve's arbitration provision. Plaintiffs represented by Bucher Law prevailed in those arbitration proceedings, obtaining rulings that rejected the enforceability of Valve's consumer-facing arbitration agreement. The pressure created by Bucher Law's vigorous arbitration efforts allowed the *Elliott* Plaintiffs to pursue their claims in court and seek classwide relief. *See id.* ¶¶ 8-12.

**C. Proposed Class Counsel have extensive experience in litigating complex antitrust class actions including the types of claims asserted in this action (Fed. R. Civ. P. 23(g)(1)(A)(ii)).**

Courts have found that proposed class counsel's experience and service as lead counsel in prior cases is particularly persuasive when selecting interim lead counsel. Proposed Class Counsel have a wealth of relevant experience supporting their appointment.

**1. Hagens Berman**

Hagens Berman is an 80-lawyer firm headquartered in Seattle, with additional U.S. offices in Berkeley, Boston, Chicago, Los Angeles, New York, Phoenix, and San Diego. Since its founding in 1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex antitrust cases. Hagens Berman was named as a 2022 Elite Trial Lawyer – Litigation Firm of the Year in the Antitrust Category by the National Law Journal, as well as Practice Group of the Year—Antitrust by Law 360 for 2023 and 2022, and honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice by the American Antitrust Institute in 2021. *See* Berman Decl. Ex. 1 (firm resume). Hagens Berman has repeatedly taken antitrust matters to verdict and defended the results on appeal, including up to the Supreme Court.

Hagens Berman is committed to encouraging diversity in the practice of law. Berman Decl. ¶ 8. Diversity in class action proceedings rightly has received increased attention in recent years, with many judges seeking to make appointments "that are consistent with the diversity of our society and the justice system." *See id.* Ex. 2. Best practices ask judges to appoint a diverse group,



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

considering gender, race and national origin, age, and sexual orientation, while also being "mindful of creating a team with diversity of experience." *Id.* Ex. 3 at 46. This team is committed to developing opportunities for new attorneys to have meaningful opportunities in court, with appropriate supervision. The attorneys responsible for this litigation will include the founding and managing partner of Hagens Berman, Steve Berman, Ben Harrington, Elaine Byszewski, and Kelly Fan. This team of litigators reflects Hagens Berman's commitment to diversity in terms of gender, race, and experience.

**a. Steve Berman**

Mr. Berman, the founder and managing partner of Hagens Berman, has served as lead or co-lead counsel in antitrust, securities, consumer, product liability, and employment class actions and complex litigation throughout the country. Appointing Mr. Berman in a major MDL, Judge Shadur remarked:

> But it must be said that the track record of Hagens Berman and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation and a substantial number of really outstanding big ticket results.
>
> It may be worth mentioning that to this Court's recollection it has had no first-hand judicial experience with … the two finalist firms … But that is not true of its colleagues in this District of more recent vintage, an email inquiry to whom brought in return some high praise of attorney Berman's skills.[1]

Examples of Mr. Berman's involvement in litigation include:

- *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-02541-CW (N.D. Cal.): Mr. Berman served as the lead trial lawyer on behalf of college athletes, where the court granted injunctive relief on behalf of the class following a bench trial. Hagens Berman also recovered settlements totaling $200 million.
- *In re E-Books Antitrust Litig.*, No. 11-md-02293 (S.D.N.Y.): Mr. Berman acted as co-lead counsel on behalf of a class of purchasers of eBooks who were overcharged for the purchase due to a price-fixing conspiracy between the publishers of eBooks

[1] Memorandum Order at 5, *In re Stericycle, Inc., Sterisafe Contract Litig.*, MDL No. 2455, No. 13-cv-5795 (N.D. Ill. Oct. 11, 2013), ECF No. 56 (footnotes omitted).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

and Apple. This case led to recovery by consumers of $566 million—twice the estimated damages.

- *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-cv-05238 (E.D.N.Y.): Mr. Berman helped lead this record-breaking antitrust case against credit card giants Visa and MasterCard, which resulted in a $3.05 billion cash settlement and injunctive relief valued at more than $20 billion.
- *Frame-Wilson v. Amazon.com, Inc.*, No. 2:20-cv-00424 (W.D. Wash.); *De Coster v. Amazon.com, Inc.*, *De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693 (W.D. Wash.): Mr. Berman co-leads a team of attorneys appointed interim lead counsel to represent consumers against Amazon, alleging that Amazon's PMFN agreements cause consumers to pay higher prices.

**b. Ben Harrington**

Mr. Harrington has experience in all aspects of antitrust class actions, from case development to appeals. His practice focuses on digital markets and "big tech," and he has played a key role in groundbreaking monopolization litigation against Apple and Google. Notable matters include *Cameron v. Apple*, 19-cv-3074 (N.D. Cal), and *In re Google Developer Antitrust Litigation*, 20-cv-5792 (N.D. Cal.), which challenged Apple's and Google's dominance of app distribution markets. The *Cameron* matter resulted in a $100 million settlement and injunctive relief for app developers, with Mr. Harrington's team receiving the American Antitrust Institute's 2022 award for Outstanding Antitrust Litigation Achievement. The Google matter resulted in a $90 million settlement and forward-looking injunctive relief (including lower commission rates) for Android app developers. Mr. Harrington is also playing a lead role in ongoing antitrust cases involving the distribution of iPhones and iPads (*Floyd v. Amazon & Apple*, 22-cv-1599 (W.D. Wash)), the digital wallets market (*Affinity v. Apple*, 22-cv-4174 (N.D. Cal.)), and cloud storage services (*Gamboa v. Apple*, 24-cv-1270 (N.D. Cal.)). Through these matters, and others, Mr. Harrington has developed expertise in econometric modelling, platform economics, and the application of the Sherman Act to emergent technology markets. Prior to joining Hagens Berman,



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Mr. Harrington clerked for the Honorable Harris Hartz, U.S. Court of Appeals, Tenth Circuit, and the Honorable Nina Gershon, U.S. District Court for the Eastern District of New York.

**c. Elaine Byszewski**

Ms. Byszewsi is a graduate of Harvard Law School and the managing partner of Hagens Berman's Los Angeles office. Ms. Byszewski has litigated many complex class actions on behalf of consumers resulting in multimillion dollar settlements, including cases against Toyota, Ford, AstraZeneca Pharmaceuticals, Berkeley Premium Nutraceuticals, Solvay Pharmaceuticals, Costco, Apple, and KB Homes. Ms. Byszewski has focused her practice on brief writing for firm cases, particularly those involving antitrust violations and consumer fraud. Ms. Byszewski was a critical team member and primary drafter of nearly all briefs in *Edwards v. Nat'l Milk Producers Fed.*, No. 11-cv-04766 (N.D. Cal.), from complaint filing to settlement of $52 million and received the American Antitrust Institute's 2018 award for Outstanding Antitrust Litigation Achievement in Private Law Practice. Ms. Byszewski drafted the petition for *en banc* review in *Hyundai & Kia Fuel Economy Litig.*, No. MDL 13-2424 (C.D. Cal.), which was granted and resulted in affirmance of the nationwide class action settlement in 2019. *See In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019). Ms. Byszewski was also a brief writer on the litigation team that settled *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-MDL-2151 JVS (C.D. Cal.), for $2 billion and was a finalist for Public Justice's 2014 Trial Lawyer of the Year award.

**d. Xiaoyi (Kelly) Fan**

Kelly Fan is a 2020 graduate of the University of Washington School of Law and works as an associate attorney at Hagens Berman's Seattle office. She is a member of the teams in *Frame-Wilson, et al. v. Amazon.com, Inc.*, No. 2:20-cv-00424 (W.D. Wash.), and *De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693 (W.D. Wash.), where the Court appointed Hagens Berman as interim co-lead counsel to represent consumers who were allegedly harmed by Amazon's PMFN clauses restricting prices. Ms. Fan has drafted motions and formal discovery responses, reviewed document productions, and assisted with deposition and trial preparations. Prior to joining Hagens Berman, Ms. Fan clerked at the Oregon Court of Appeals.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**2. Bucher Law**

Bucher Law PLLC is a leading mass arbitration boutique founded by William Bucher. The firm represents over 70,000 clients, with a focus on consumer arbitrations and antitrust litigation. Under the leadership of Mr. Bucher, Bucher Law PLLC has pioneered groundbreaking legal strategies to challenge Valve's monopolization of the PC gaming market, representing over 50,000 Valve consumers, including the four named *Elliott* Plaintiffs who successfully challenged Valve's arbitration provision. *See* Bucher Decl. ¶ 3. Throughout his career, Mr. Bucher has won over 160 arbitrations on merits determinations. *See id.* Ex. 1. Prior to founding Bucher Law PLLC, Mr. Bucher litigated intellectual property, trademark and other matters at two leading international law firms.

**D. Proposed Class Counsel have deep knowledge of the applicable law and led the charge developing the law relevant to this case (Fed. R. Civ. P. 23(g)(1)(A)(iii)).**

Hagens Berman has deep experience litigating cases involving similar claims. Here, Valve, in exercising its monopoly power, imposes a PMFN clause to prevent game publishers from selling games and in-game products at lower prices on competing online platforms. This has resulted in customers paying supracompetitive prices for products sold on Valve's online store. Hagens Berman has been appointed as interim co-lead counsel for two similar cases involving Amazon's anti-discounting policies and other restraints that prevent third-party sellers from offering lower prices off Amazon: *Frame-Wilson v. Amazon.com, Inc.*, No. 2:20-cv-00424 (W.D. Wash.), and *De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693 (W.D. Wash.). The plaintiffs in both *Frame-Wilson* and *De Coster* have overcome multiple rounds of motions to dismiss and plaintiffs in *De Coster* have moved to certify a nationwide class. Berman Decl. ¶ 4.

Moreover, Hagens Berman is at the forefront of a series of cases against major tech companies. For example, acting as lead counsel Hagens Berman recently settled the app developers' claims against both Google and Apple for a total of $190 million in *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.), and *Cameron v. Apple Inc.*, No. 4:19-03074-YGR (N.D. Cal.). These cases involved anticompetitive restraints that secured Google and



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Apple monopoly power in in the distribution of apps and in-app products. *See* Berman Decl. ¶¶ 2-3.

While this litigation will pose its own unique challenges, Proposed Class Counsel have the breadth of knowledge, and expertise to vigorously and skillfully represent consumers.

**E. Proposed Class Counsel have the human and financial resources to litigate these claims (Fed. R. Civ. P. 23(g)(1)(A)(vi)).**

This litigation team has demonstrated its dedication and commitment in the many complex cases discussed above, and counsel will bring the same resources and commitment to ensure a successful outcome of this case. Proposed Class Counsel are well-capitalized and possesses some of the largest and most robust investigatory and litigation teams in their field. Hagens Berman consistently advances millions of dollars in litigation costs without third-party funding in matters of comparable size and complexity. *Id*. ¶ 6.

Counsel to this case also commit to ensuring cost-effective representation of the class. Proposed Class Counsel have a robust timekeeping policy to ensure timely and detailed records of all billable time. Time must be contemporaneously tracked by attorneys in time-keeping software, according to time codes that are standard in large antirust cases. *Id.* ¶ 7.

## V. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as interim co-lead class counsel to represent the proposed consumer class in this litigation.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

DATED: October 2, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP
/s/ *Steve W. Berman*
Steve W. Berman (WSBA No. 12536)

/s/ *Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: kellyf@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3034
Facsimile: (510) 725-3001 fax
E-mail: benh@hbsslaw.com

William Ward Bucher IV (*pro hac vice* forthcoming)
BUCHER LAW PLLC
350 Northern Blvd, Ste. 324 -1519
Albany, NY 12204-1000
Telephone: (202) 997-3029
Email: will@bucherlawfirm.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF recipients.

DATED this 2nd day of October, 2024.

*s/ Steve W. Berman*
Steve W. Berman

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I hereby certify that this memorandum contains 4,188 words, excluding the caption, table of contents, table of authorities, signature blocks, and certificate of service, in compliance with the Local Civil Rules.

DATED this 2nd day of October, 2024.

*s/ Steve W. Berman*
Steve W. Berman



